**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDREA LASHAWN GRANT,<br><br>　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　Defendant. | Civil Action No. 11-00467 (JDB) |

**MEMORANDUM OPINION**

Plaintiff Andrea Lashawn Grant seeks a judgment reversing the denial of her claim for Social Security Disability Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). In the alternative, she seeks a remand to the Social Security Administration for a new administrative hearing. Before the Court are Grant's motion for a judgment of reversal or for remand [Dkt. 9] and defendant's motion for a judgment of affirmance [Dkt. 11], which were filed pursuant to 42 U.S.C. § 405(g). For reasons explained below, the Court will deny plaintiff's motion for judgment of reversal and grant defendant's motion for judgment of affirmance.

**I.      Background**

Grant is a 38-year-old high school graduate who has suffered from problems with her hands, arms, back and neck since at least November 15, 2001. Through 2009, she was treated fairly regularly by orthopedist Rida Azer, M.D. Grant ceased working in April 2006, and thereafter applied for disability benefits. Her first application was denied in October 2006 and

1

she applied again on February 15, 2007.[1] Id. at 172-190.  She was subsequently examined by two State Agency consultants – orthopedic surgeon Rafael Lopez, M.D., and neurologist Chitra Chari, M.D.  Her medical records were then also evaluated by four other State Agency consultants, neurologist Albert Heck, M.D., internist Currie Ball, M.D., orthopedic surgeon Leopoldo Salazar, M.D., and pediatrician Fizzeh Nelson-Desiderio, M.D.[2]  Based on the medical evidence and Grant's testimony at an administrative hearing on August 14, 2009, Grant was denied disability benefits.

Before 2011, Grant had worked as an administrative assistant, hospital clerk, dental assistant and data entry clerk.  Administrative Record ("A.R.") at 15.  She was diagnosed with bilateral carpal tunnel syndrome and had decompression surgery and tenosynovectomy, both of which relieve pressure on nerves in the hand, on both wrists on November 15, 2001.  A.R. at 425.  She returned to work after recovering from her surgery.  In January 2004 Grant visited Dr. Azer, complaining of pain in both wrists.  A.R. at 272.  Both a compression test and Tinnel's sign were negative. Id.  Grant had good grip but slightly diminished sensation on the left hand. Id.  An electromyogram ("EMG") and nerve conduction study were both normal. A.R. at 271.

On February 24, 2004, Grant returned to Dr. Azer's office and reported that she had been injured at work when a door crushed her right wrist. A.R. at 271, 265.  An MRI revealed a synovial cyst which was surgically removed on April 20, 2004. A.R. at 270-71.  On July 14, 2004, Dr. Azer reported that Grant was progressing well but should refrain from pushing, pulling and lifting heavy objects with her hands, repetitive movements, and strenuous use of the hands.

---

[1] Grant's disability report for her February 15, 2007 filing indicates that she had previously applied for Social Security disability benefits but that her application was denied on October 4, 2006.  No additional information regarding that filing is currently before the Court.

[2] All physician practice areas are as reported by the Maryland Board of Physicians Practitioner Profile System at http://mbp.state.md.us/bpqapp/PProfile.asp.

A.R. at 265. She noted that Grant had been working between 4 and 6 hours per day and opined that the limitations would be permanent. Id.

On October 13, 2004, Grant reported pain in her right elbow and tenderness over the medial epicondyle of the right humerus and the right ulnar nerve. A.R. at 264. She had a positive Tinnel sign. Id. She was prescribed Daypro, an anti-inflammatory. On October 27, 2004, Dr. Azer noted that Grant had satisfactory grip and satisfactory sensation of the left median nerve. A.R. at 263. Grant followed up on December 22, 2004, complaining of pain in her left upper arm, elbow, and forearm. Id. at 262. Dr. Azer opined that she had severe tendonitis. Id. She had satisfactory grip and normal sensation. Id. Dr. Azer prescribed ibuprofen. Id.

On March 2, 2005, Grant visited Dr. Azer reporting symptoms of increasing pain in both shoulders and elbows as well as numbness at the elbow. Id. at 359. Dr. Azer opined that this was evidence of ulnar neuritis. Id. Grant had an EMG and nerve conduction test on March 7 and an x-ray on March 11. Id. at 357-58. The x-ray was normal except for evidence of a reversal of cervical lordosis. Id. at 358. The EMG and nerve conduction tests revealed "bilateral ulnar neuritis with probable entrapment syndrome at the elbow," "right c5-6 cervical neuritis" and "chronic bilateral carpal tunnel syndrome." Id. at 357. Dr. Azer ordered an MRI and recommended surgical intervention. Id.

During a visit on March 3, 2006, Dr. Azer noted that Grant had been "unable to work." Id. at 355. She indicated that Grant was to refrain from the same activities she had earlier noted, including "pushing, pulling, lifting heavy objects, strenuous use of the hands, repetitive use of the hands, and having her hands close to machinery." Id. She continued to recommend surgery but noted that Grant was waiting to resolve problems with her insurance.

On May 31, 2006, Dr. Azer indicated that Grant was developing ulnar clawhand palsy, but that "surgery performed on her right and left carpal tunnel syndrome was progressing well." Id. at 401. She opined that Grant was "totally disabled and not fit for employment." Id. Grant's symptoms remained the same during follow-ups on June 28, 2006 and August 30, 2006. Id. at 352-53.

On September 5, 2006, after applying for Social Security benefits, Grant was examined by State Agency orthopedic surgeon Rafael Lopez, M.D. Id. at 342-44. Dr. Lopez estimated grip strength at 4/5. Id. at 342. He observed no limitations of motion, full rotator cuff strength, and normal hand function. Id. 343. He found no evidence of atrophy, swelling, or tenderness. Id. He noted diminished sensation in the hands in a "stocking glove configuration" and good motor strength with the exception of grip strength. Id. His diagnosis was that there was some disability related to Grant's upper extremities regarding repetitive work-related activities or heavy lifting, but no specific limitations in the use of hands, arms or fingers. Id. at 344

On September 12, 2006, State Agency neurologist Albert Heck, M.D., reviewed Grant's medical records, noting the "sparse medical evidence of record." Id. at 347. Dr. Heck noted considerable discrepancies between diagnoses and observations provided by Dr. Azer and the results of electrophysical tests and the subsequent clinical evaluation by Dr. Lopez. Id. Dr. Heck commented that Grant's carpal tunnel syndrome was "non-severe" and that there was insufficient or conflicting evidence to establish ulnar nerve problems or cervical radiculopathy. Id.

On October 3, 2006, Grant visited Dr. Azer complaining of pain and limitation of movement in the cervical spine. Id. at 351. An x-ray was normal. Id. Dr. Azer ordered another EMG and nerve conduction study. Id. These were conducted on October 16, 2006 and revealed

"bilateral ulnar neuritis affecting the area across the elbow." Id. at 350, 378.  Also on October 3, 2006, Grant's medical records were reviewed by general surgeon Leopold Salazar, M.D., for assessment of her neck and back pain.  Id. at 348.  He concluded that she had non-severe chronic cervical and lumbar strain.  Id.

After her first application was denied Grant filed a second application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments on February 15, 2007.  Id. at 172-90.  She then began another round of doctor's visits.  In a consultation report on September 19, 2007, Dr. Azer indicated that Grant had right and left carpal tunnel syndromes, cervical disc syndrome, and ulnar neuritis.  Id. at 373.  Grant had been treated with "conservative measures" and had not improved.  Id.  Grant was examined on October 10, 2007 by another state Agency consultant, neurologist Chitra Chari, M.D.  Id. at 380-92.  Grant told Dr. Chari that she had significant pain and discomfort on a daily basis, scoring a 5-6 on a 10 point scale.  Id. at 381.  Dr. Chari found minimal motor system involvement, but decreased sensation to touch in her hands.   Dr. Chari evaluated Grant on various manipulative tasks and found mild difficulty or slowness in some fine motor skill tasks.  Dr. Chari opined that "activity restriction is in account of pain."  Id. at 383.

State agency medical consultant Currie Ball, M.D., then completed a Residual Functional Analysis ("RFC") which indicated that Grant could sit, stand, or walk for 6 hours in a normal 8 hour work day, could occasionally lift up to 20 pounds, and had no pushing or pulling limitations.  Id. at 387.  The RFC was based on Dr. Ball's review of an examining physician's records,[3] and took Grant's reported pain into account.  Dr. Ball indicated that Grant had "good

---

[3] It is unclear whether Dr. Ball was referring solely to the examination of Dr. Choi or also to Dr. Azer's assessments.  Although Dr. Ball only makes reference to Dr. Choi's examination in his evaluation, he did mention a visit that Grant had with Dr. Azer in an earlier review of the

hand function bilaterally," id. at 389, and opined that there were no significant differences between her conclusions and those of the examining doctor or doctors. Id. On October 18, 2007 Grant's SSD and SSI applications were denied. Id. at 24.

Grant next visited Dr. Azer on December 11, 2007 and complained of increasing pain in the right and left elbows and increasing numbness in the medial aspect of the right and left forearms, wrists and hands. Id. at 394. Grant was scheduled for outpatient surgery on the right elbow. Id. On February 6, 2008, Dr. Azer completed a consultation form from Disability Determination Services and reported the same findings and limitations as before. Id. at 433-34. Thereafter, on February 11, 2008, State medical consultant Fizzeh Nelson-Desiderio, M.D. confirmed Dr. Ball's RFC and noted that there were no new allegations or change in status. Id. at 440. Grant's SSD and SSI reconsideration requests were subsequently denied. Id. at 24. She requested an administrative hearing on March 25, 2008. Id.

Grant next saw Dr. Azer on August 20, 2008. Id. at 443. She had still not had surgery. She reported that she was now experiencing pain and weakness in the right and left shoulders in addition to her previously reported elbow pain. Id. Dr. Azer provided a prescription for Relafen, an anti-inflammatory, and ordered another round of x-ray, EMG and nerve conduction studies. Grant followed up with Dr. Azer nearly a year later on June 10, 2009. Id. at 444. Dr. Azer diagnosed cervical disc syndrome and impingement syndrome and reported that sensation over the right and left median and ulnar nerves was now satisfactory. Id. Dr. Azer reported the same functional limitations as before and noted that Grant could perform duties involving grasping and finger and hand manipulations, but should avoid reaching above shoulder level, lifting heavy

---

records. See A.R. at 387, 379. This could suggest that Dr. Ball had access to all of Grant's medical records and was referring to both Dr. Azer and Dr. Choi when he indicated that his assessment did not significantly differ from that of an examining physician.

6

objects, and repetitive movements. Id. at 445. Dr. Azer reported that Grant had intermittent pain at her neck and shoulders. Id. On the same day, Dr. Azer filled out the Multiple Impairment Questionnaire, noting carpal tunnel syndrome and cervical disc syndrome. Id. at 231-38. She opined that Grant could only sit, stand, or walk for 0-1 hours in an 8 hour day, and that she could not keep her neck in a constant position. Id. at 233, 235. According to Dr. Azer, Grant had pain, fatigue and other symptoms which constantly interfered with attention and concentration, she was incapable of tolerating even low stress, and she was unlikely to have any "good days." Id. at 236-37. Grant had pain and fatigue which rated a 10 on a 10 point scale. Id. at 234. Regarding the use of hands and arms, Dr. Azer opined that Grant could never lift or carry any weight at all, and that she was essentially precluded from grasping objects, using her hands for fine manipulations, or using her arms for reaching. Id. at 234-35.

An administrative hearing was held on August 14, 2009, during which the Administrative Law Judge ("ALJ") heard testimony from Grant and vocational expert ("VE") Dr. Adina P. Leviton. Id. at 34-69. The ALJ issued a decision on September 3, 2009 holding that Grant was not entitled to DIB or SSI. Id. at 21-23. This decision became the final decision of the Commissioner on January 10, 2011, when the Appeals Council denied plaintiff's request for review. Id. at 1-3.

## II.     Standard of Review

Both parties seek relief pursuant to the Social Security Act, 42 U.S.C. § 405(g). Under that statute, the role of the reviewing court is limited to assessing whether the Commissioner's conclusions are supported by substantial evidence. Brown v. Bowen, 794 F.2d 703, 705 (D.C. Cir. 1986). The reviewing court must uphold any decision of the Commissioner that is supported by substantial evidence and the correct application of the relevant legal standards. Butler v.

Barnhart, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence "requires more than a scintilla, but less than a preponderance of the evidence." Evans Fin. Corp. v. Director, 161 F.3d 30, 34 (D.C. Cir. 1998) (internal quotation marks omitted).

### III.   Statutory and Regulatory Framework

In order to qualify for disability insurance benefits under Title II of the Social Security Act, a claimant must establish that he or she is "disabled." 42 U.S.C. § 423. Under the Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To evaluate whether a claimant is eligible under the Act, the Commissioner has established a five-step sequential evaluation process for assessing a claimant's disability. See 20 C.F.R. § 404.1520.  The claimant must first show that she is not presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).  Second, the claimant must demonstrate a "severe impairment" that "significantly limits [her] … ability to do basic work activities." 20 C.F.R. § 404.1520(c).  The ALJ will then assess whether the claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1; if so, the claimant is deemed disabled.  If not, the ALJ will assess the claimant's residual functional capacity ("RFC") -- "what an individual can still do despite his or her limitations." Ross v. Astrue, 636 F. Supp. 2d 127, 132-33 (D.D.C. 2009).  At the fourth step, the claimant must show that she is incapable of performing her "past relevant work." 20 C.F.R. § 404.1520(e)-(f).  If the claimant has satisfied the first four steps, the Commissioner bears the burden at step five of demonstrating that the claimant is able to perform "other work" based on a consideration of her RFC, age, education and work experience.  20 C.F.R. § 404.1520(g); see Butler, 353 F.3d at 997.

Here, the ALJ concluded that Grant was not engaged in substantial gainful activity and had a severe impairment and thus satisfied steps one and two. At step three the ALJ concluded that she did not have an impairment that met or equaled an impairment listed in Appendix 1, and thus assessed her RFC. At step four, the ALJ conceded that Grant was incapable of performing her past relevant work. At the final step, the ALJ concluded that because Grant's RFC, age, education and work experience allowed her to perform other work, she was not disabled for purposes of the Social Security Act. The Court concludes that the ALJ's findings were based on substantial evidence and free of legal error, and hence the Court must grant the Commissioner's motion for judgment of affirmance and deny plaintiff's motion for judgment of reversal.

**IV.    Discussion**

Grant brings three challenges to the ALJ's decision. First, Grant argues that the ALJ erred by not giving her treating physician's opinion "controlling weight" and failing to give adequate reasons for doing so. Second, Grant argues that the ALJ erred in concluding that some of Grant's subjective complaints were not credible and should be disregarded. Third, Grant challenges the testimony of the vocational expert as to other jobs that Grant could perform on the ground that the ALJ's hypothetical did not accurately describe her limitations.

*a. The ALJ did not err in weighing the relevant medical opinions*

Grant contends that the ALJ was required to give the medical opinion of her treating physician controlling weight; in the alternative, she maintains that he did not sufficiently explain his reasons for declining to do so. Grant further contends that the ALJ gave improper weight to the medical opinions in her case. Specifically, Grant argues that the ALJ did not properly consider the factors laid out in 20 C.F.R. § 404.1527(d)(2) in deciding to give her treating

9

physician's opinion limited weight and the opinions of two State Agency consultative examiners and four non-examining reviewers significant weight.

The D.C. Circuit follows the "treating physician" rule, which mandates that the opinion of a treating physician be accorded "substantial weight." Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987). Nevertheless, the opinion of a treating physician is controlling in a Social Security disability case only if it is "not inconsistent with other substantial record evidence and [it is] well-supported by medically acceptable clinical and laboratory diagnostic techniques." Butler, 353 F.3d at 1003. When an ALJ disregards the opinion of a treating physician, he must explain his reasons for doing so. Williams v. Shalala, 997 F.2d 1494, 1498 (D.C. Cir. 1993).

Although Grant asserts that the ALJ did not explain what evidence was found to be inconsistent, it is clear from the ALJ's decision as a whole, as well as from the substantial medical record in the case, why the ALJ found Dr. Azer's opinion to be not well-supported and inconsistent with other evidence in the record. The ALJ noted that Dr. Azer's opinion was "generally inconsistent with those of two independent consultative examiners." A.R. at 29. While the ALJ did not make an explicit comparison, his decision notes that Dr. Azer recommended numerous restrictions involving the hands while the State agency examiners found far more limited restrictions. Id. at 29-30. The ALJ also noted that there had been no laboratory tests performed in the previous four years that supported Dr. Azer's opinion that Grant had impairments in her spine, elbows or shoulders, and concomitant disabling pain. A.R. at 29. The ALJ also cited to the medical opinion of State Agency medical consultant and neurologist Albert Heck, M.D., who explicitly noted the contradictions in the record between Dr. Azer's findings, the clinical and electrophysiological examinations, and the opinion of another examining physician, Dr. Stuart. A.R. at 30; id. at 347. That the ALJ's decision noted the contrary

evidence in the record satisfies the requirement to explain the rejection of the treating physician's opinion. Williams, 997 F.2d at 1499.  In addition, the ALJ permissibly disregarded Dr. Azer's conclusory statements that Grant was "totally disabled and not fit for employment" (A.R. at 30) under 20 C.F.R. § 404.1527(e)(1). See Turner v. Astrue, 710 F. Supp. 2d 95, 107 (D.D.C. 2010) (holding that where a doctor's assessments are "conclusory in nature and not culled from objective medical evidence, they did not carry binding force" pursuant to Social Security regulations); see also 20 C.F.R. § 404.1527(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.") Because the ALJ determined that the opinion of Grant's treating physician was "inconsistent with the record as whole" and was not supported by objective medical evidence, he was required to find that Dr. Azer's opinion was not controlling. A.R. at 30, 29; see Social Security Ruling ("SSR") 96–2p, Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 *2 (SSA July 2, 1996) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.").

    The lengthy medical records also back up the ALJ's findings.  Most notable is the Multiple Impairment Questionnaire that Dr. Azer completed on June 10, 2009, in which Dr. Azer opined that Grant had marked impairment in all hand-related tasks, including any lifting whatsoever, that she could only sit or stand 0-1 hours per day, and that her impairments constantly interfered with her ability to concentrate. A.R. at 231-38. These findings directly conflict with her notes from Grant's visit on the same day which indicated that Grant had improved sensation, could perform duties involving grasping and finger and hand manipulations,

and was limited only in reaching above shoulder level, lifting heavy objects, and repetitive movements. Id. at 445. Dr. Azer's opinion as to mental functioning and inability to sit or stand more than one hour per day has no basis in the medical record and conflicts with Grant's own testimony that she had no problem walking around and no problem concentrating for more than an hour. Id. at 63, 68. While the ALJ's decision does not explicitly note all of these discrepancies, sufficient information has been provided for the Court to understand its reasoning. This is therefore unlike cases that Grant has cited where the reviewing court remanded to the Commissioner because it was impossible to "discern from the record the ALJ's basis for rejecting [the treating physician's] opinions." Butler, 353 F.3d at 1002. Based on the record, the Court finds no error in the ALJ's determination that the opinion of Dr. Azer should not be given controlling weight.

Grant also contends that the ALJ erred by failing to consider the factors laid out in 20 C.F.R. § 404.1527(d)(2) when determining how much weight to assign the relevant medical opinions.[4] However, the ALJ has no obligation to explicitly enumerate each of the six factors described in the Social Security regulations. The regulations require only that "good reasons" be provided for the weight given a treating physician's opinion. See Turner, 710 F. Supp. 2d at 106 (quoting 20 C.F.R. § 404.1527(d)(2)). Contrary to Grant's assertion, the factors do not all weigh in favor of crediting her treating physician's opinion. See Pl. Mot. for J. of Reversal at 13. As noted above, the ALJ specifically determined that Dr. Azer's opinion was contradicted by other evidence in the record and that there were no recent objective clinical findings that supported Dr. Azer's opinion. A.R. at 29. In addition, the ALJ's decision reflects that substantial weight was

---

[4] 20 C.F.R. § 404.1527(d)(2) lays out six factors to be considered when deciding how much weight to give a non-controlling medical opinion: 1) length of the treatment relationship and frequency of examination; 2) nature and extent of the relationship; 3) supportability; 4) consistency; 5) specialization; and 6) any other relevant considerations.

given to the opinions of Dr. Lopez, Dr. Chari, Dr. Ball, Dr. Nelson-Desiderio, Dr. Salazar, and Dr. Heck, two of whom conducted physical examinations of Grant, because they were consistent with the record as a whole and supported by substantial evidence. A.R. at 30. Hence, the ALJ found that at least two of the factors in 20 C.F.R. § 404.1527(d)(2) weighed in favor of according the opinions of these doctors substantial weight.

Grant also argues, based on Smith v. Schweiker, 795 F.2d 343, 348 (4th Cir. 1986), that the fact that two of the State Agency consultative examiners may not have had access to her treatment records weighs heavily against giving their opinions substantial weight. In Smith, the Fourth Circuit held that the medical opinions of non-examining physicians who were not provided a description of a claimant's limitations by an examining medical source, and whose opinions are contradicted by all of the other evidence in the record, could not be given substantial weight. Id. However, those are not the circumstances that exist here. While Grant is correct that it does not appear that Dr. Chari had the benefit of Dr. Azer's treatment notes (A.R. at 383), it appears that Dr. Ball did have access to at least some of those records (A.R. at 379), that Dr. Lopez had access to some prior diagnostic studies (A.R. at 343), and that at least two of the non-examining sources -- Dr. Heck and Dr. Nelson-Desiderio -- reviewed Grant's entire medical history (A.R. at 347, 440). The record reflects that the State Agency medical consultants relied on the opinions of examining sources, objective medical tests, and their own examinations, and that they were consistent in their conclusions. All of these factors support the ALJ's conclusion that these medical opinions should be afforded substantial weight. Although Grant may be correct that it would not have been appropriate to give substantial weight to any single non-examining medical opinion that conflicted with her treating physician's opinion,

substantial evidence supports the ALJ's conclusion that the consistent medical opinions of five State Agency consultative examiners should be afforded substantial weight.

    *b. The ALJ did not err in assessing Grant's credibility*

Grant next contends that the ALJ erred when assessing her credibility. Specifically, she argues that it was error for the ALJ to assess her demeanor; that it was error to compare her subjective complaints to the RFC assessment rather than the medical records; and that there was no substantial evidence supporting the ALJ's conclusion that Grant's ability to do activities of daily living was inconsistent with her assertion of disabling pain.

The credibility determination is solely within the realm of the ALJ. A reviewing court will only intercede where an ALJ fails to articulate a rational explanation for his or her finding. Compare Tyler v. Weinberger, 409 F. Supp. 776, 789 (E.D. Va. 1976) (finding unreasonable the ALJ's determination that the claimant's assertion that he was unable to sit for longer than a little more than an hour without laying down was inconsistent with claimant's ability to sit in a hearing which lasted for a little over an hour) with Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (noting that the ALJ's assessment of a claimant's demeanor was reasonable where the claimant asserted that a speech impediment prevented him from retaining employment but he had no difficulty communicating throughout a two-hour hearing).

When assessing credibility, the ALJ must determine if the symptoms reported can reasonably be accepted as consistent with the objective medical evidence. The ALJ must weigh a number of specific factors in assessing a claimant's credibility. See SSR 96–7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of An Individual's Statements, 1996 WL 374186 (SSA July 2, 1996). These include:

> 1) [t]he individual's daily activities, 2) [t]he location, duration, frequency, and intensity of the individual's pain or other symptoms, 3) [f]actors that precipitate

and aggravate the symptoms, 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms, 5) [t]reatment, other than medication, the individual receives or has received for relief of pain or other symptoms, 6) [a]ny measures other than treatment the individual uses or has used to relieve pain or other symptoms…and 7) [a]ny other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id.

Here, the ALJ's decision correctly evaluated these factors and determined that they weighed in favor of concluding that Grant did not suffer from disabling pain. The ALJ considered Grant's daily activities and noted that she could perform numerous regular tasks and chores. Notwithstanding Grant's assertion that the ALJ's summary of her activities "put a significant gloss" on her abilities, the Court finds that the ALJ did acknowledge many of Grant's limitations such as her difficulty sleeping, occasional napping during the day, and trouble grooming, and did not overstate her acknowledged ability to perform activities such as cooking and taking public transportation. A.R. at 28. The ALJ also noted that the medical records reflected minimal treatment since the onset of Grant's alleged disability. A.R. at 29. Specifically, Grant had not participated in any recommended physical therapy, had rarely been prescribed pain medication, and indeed had not taken any in the previous two years. Id. As the Commissioner notes, neither the treatment record nor Grant's testimony references any significant effort to reduce the pain that Grant asserts is disabling. See Def. Opp. to Mot. for J. of Reversal at 16. The ALJ observed that Grant's "overall demeanor" and ability to "answer questions quite clearly" were "not suggestive of a person experiencing disabling limitations." A.R. at 30. The Court acknowledges that demeanor is an acceptable basis on which to form a credibility determination, and that an ALJ's assessment of credibility is "entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor." Thomas, 677 F.

15

Supp. 2d at 307; see also Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996) ("We will not disturb the decision of an [ALJ] who seriously considers, but for good reasons explicitly discredits, a claimant's testimony of disabling pain."). Here, the ALJ's decision demonstrates that he did not rely solely upon personal observations to reach this determination; rather, he considered the entire record, including medical opinions, the treatment record and objective medical tests, as well as Grant's testimony and demeanor. Any potential deficiency in the ALJ's evaluation of Grant's demeanor would not require the Court to conclude that the ALJ's determination of Grant's credibility was not based on substantial evidence or was otherwise erroneous.

    *c. The ALJ did not err in formulating the vocational expert's hypotheticals*

Lastly, Grant contends that the ALJ erred when he relied on the vocational expert's ("VE") answers to hypotheticals that did not accurately reflect Grant's condition. See Pl. Mot. for J. of Reversal at 17-18. Specifically, Grant suggests that the hypotheticals should have included an additional limitation that any prospective job not require even occasional reaching, handling, and manipulating objects with her fingers, and also accommodate her need to "rest her hands for 20 to 30 minutes after using her hands for any chore or task." Id. Because these additional limitations are supported only by the discredited opinion of Dr. Azer and Grant's subjective statements -- which the ALJ found to be not creditable -- the Court finds that the ALJ was not required to include these limitations in the VE's hypotheticals. However, even assuming that these additional limitations were appropriate, the VE's testimony reflects that these limitations would not "undermine the foundation for the expert's ultimate conclusion that there are alternative jobs appellant can do." Simms, 877 F.2d at 1053.

Of the three examining physicians and the four non-examining physicians, only Dr. Azer concluded that Grant was functionally precluded from doing occasional reaching, handling, and

manipulation with her fingers, and even that assessment came only in Dr. Azer's "Multiple Impairment Questionnaire" report of April 2009, which contradicted many of her other statements. A.R. at 231-38. For example, in a consultation report written on the same day, Dr. Azer noted that Grant could "perform duties involving grasping and finger and hand manipulations." A.R. at 445. Because a further limitation in the hypotheticals of less than occasional reaching, handling and finger manipulation is not supported by the medical record, the ALJ did not err by not providing the VE a hypothetical that included that limitation.

Finally, Grant's contention that the ALJ should have credited the VE's determination that she would not be capable of performing any other job if she needed to rest her hands for 20 to 30 minutes after performing any chore or task is not supported by the record. In her testimony, Grant alleged that she needed to rest her hands for 20-30 minutes after performing grooming tasks such as doing her hair and putting earrings in. A.R. at 55. Grant did not assert that performing all tasks with her hands required her to rest 20 to 30 minutes, and nothing in the medical record supports this extreme limitation. Furthermore, as discussed above, the ALJ permissibly concluded that Grant's testimony was not credible to the extent it was not supported by the medical record. And even if the Court were to accept that Grant's productivity would be affected by a need to frequently rest her hands, such a finding would not require reversal. The hearing transcript reflects that the "less than occasional" gripping or feeling in either hand limitation was presented to the VE at the hearing. A.R. at 67. However, contrary to Grant's suggestion, the VE did not testify that there were no jobs available that would accommodate such limitations; rather, the VE indicated that such a limitation would simply cause a reduction in the available occupation base. She did note, however, that the job of surveillance system monitor

would still meet all of Grant's alleged limitations.  A.R. at 67.  As with Grant's other contentions, there was no error here.

## **CONCLUSION**

For the reasons discussed above, the Commissioner's motion for judgment of affirmance will be **GRANTED** and the plaintiff's motion for judgment of reversal will be **DENIED**.  A separate order is being issued herewith.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:  April 30, 2012